IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARVIN EDUARDO LUNA GOMEZ, )<br>  Plaintiff, )<br> )<br>v. )<br> )<br> )<br>C. DAVIS, WARDEN, et al., )<br>  Defendants. ) | Case No. 7:20-cv-00726<br><br><br><br>By: Michael F. Urbanski<br>Chief United States District Judge |

## MEMORANDUM OPINION

Marvin Eduardo Luna Gomez, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that employees at Keen Mountain Correctional Center ("Keen Mountain") violated his constitutional rights. Defendants C. Davis, K. McCoy, R. Whitt, L. Fields, L. Collins, C. Shelton, Eugene Whited, and Amber Bucklen have filed motions to dismiss to which Gomez has responded. ECF Nos. 38 and 41. For the reasons set forth below, the motions to dismiss are **GRANTED IN PART AND DENIED IN PART**.

### I.     Factual Background

The following summary of the facts is taken from the amended complaint, the supplemental amended complaint, and accompanying exhibits. The facts are presented in the light most favorable to Gomez. See McCaffrey v. Chapman, 921 F.3d 159, 163–64 (4th Cir. 2019) ("In considering a motion to dismiss under Rule 12(b)(6), a court 'accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . .'") (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)).

Gomez was transferred to Keen Mountain in February 2020. Am. Compl., ECF No. 23, at 3.[1] Because he is "not a gang member," Gomez asked to be housed with a cellmate who is "not gang affiliated." Id. Nonetheless, R. Whitt, Chief of Housing and Programs, assigned Gomez to a cell shared by a "violent gang member from California." Id.

On April 21, 2020, Gomez got into a fight with his cellmate. Id.; Disciplinary Offense Report, ECF No. 35-2 at 35.[2] During the altercation, Gomez accidentally punched a concrete wall with his right hand, causing a fracture. Am. Compl. at 3; see also Supp'l Am. Compl., ECF No. 35-2, at 13. Nurses were called to examine Gomez after the incident because his "entire body was shaking." Supp'l Am. Compl. at 13. The nurses noticed that Gomez's wrist was swollen and purple but advised him that a doctor was not available to examine him at that moment. Id. The nurses recommended that Gomez submit a sick call request explaining what had occurred. Id. Although Gomez subsequently submitted "several sick call requests," he was "never called to see the doctor about the fracture." Id. at 4.

In addition to submitting sick call requests, Gomez requested assistance from correctional officers. He alleges that he "personally asked" Unit Manager L. Fields for "x-rays and medical attention" but Fields "said that there was nothing he could do . . . and that [Gomez] should write to medical." Am. Compl. at 4. When Gomez requested help from other correctional officers, they "sent [him] back to . . . Fields." Id.

---

[1] All page citations refer to the pagination generated by the court's CM/ECF system.

[2] Gomez initially alleged that the fight occurred less than a month after he arrived at Keen Mountain. He has since noted, consistent with the resulting disciplinary offense report, that the fight occurred on April 21, 2020. See Supp'l Am. Compl., ECF No. 35-2, at 13; Pl.'s Br. Opp'n Mot. Dismiss, ECF No. 52, at 3.

2

On May 5, 2020, Gomez submitted an offender request in which he reported that he might have broken or fractured his hand during a fight. Offender Request, ECF No. 23 at 12. Gomez emphasized that he was in serious pain and that his entire wrist was swollen and purple. Id. He asked to be examined as soon as possible. Id. He also requested x-rays because he could not move his hand. Id. That same day, Amber Bucklen, a registered nurse, responded to the request by stamping the following message: "Sick Call M-F by IRF Blue Medical Box." Id.

Two days later, the medical department received another offender request from Gomez. Offender Request, ECF No. 23 at 13. Gomez complained of severe pain and asserted that he was certain that his hand was fractured. Id. He requested x-rays and asked to be seen by a doctor as soon as possible. Id. Bucklen stamped the same response to this request and advised Gomez to follow proper procedures. Id. Gomez alleges that, for several months, he "kept writing to medical" and requesting "sick calls" to no avail. Am. Compl. at 5.

On July 21, 2020, Gomez filed an emergency grievance regarding his injury. Emergency Grievance, ECF No. 23, at 15. Gomez complained of severe pain and emphasized that he had repeatedly requested x-rays for a possible fracture. Id. He also noted that he had submitted several requests to see the doctor, that he still had not been called for an appointment, and that it was "an emergency." Id. In response, a nurse informed Gomez that "pain is not an acute emergency" and that he would need to "sign up for sick call to get scheduled with [the] doctor." Id.

On September 12, 2020, Garcia submitted an informal request for medical services in which he again requested an x-ray. Informal Request, ECF No. 23 at 19. In a response dated

3

September 18, 2020, Nurse Bucklen informed Garcia that there was "no order for [an] x-ray." Id.

The record reveals that diagnostic testing was finally performed in October 2020, more than five months after Garcia injured his hand. Diagnostic Test Results, ECF No. 35-1, at 3. An x-ray revealed a fracture in the fifth metacarpal bone, which required a referral to an outside orthopedic specialist. Id..

Garcia alleges that he saw an orthopedic surgeon on October 14, 2020. Am. Compl. at 10. The surgeon advised Garcia that it was too late to perform surgery because the fracture was "already in [the] advanced healing process" and that rebreaking the bone at that time "would only make things worse." Id. The surgeon informed Garcia that he would need to wait at least a year before the bone could be rebroken and reset, and that "even after doing so, [Garcia] will have chronic arthritis for the rest of [his] life." Id. The surgeon also advised Garcia that he could have successfully repaired the fracture if Garcia had received treatment sooner. Id.

That same day, Garcia requested a "bottom bunk bed pass" from several prison officials, including Unit Mangers C. Shelton and L. Collins. Id. As of November 28, 2020, Shelton and Collins had not responded to his requests. Id.

On November 6, 2020, Gomez was placed in a cell with David Kanode, who Gomez describes as a member of the Aryan Brotherhood, a neo-Nazi prison gang. Id. at 3, 6. After Gomez was moved to the cell, Kanode told Gomez that they could not share a cell and that Gomez should ask to be moved. Id. at 6. Kanode also told Gomez that "he could snap any minute and kill [Gomez]," that "everyone knew this," and that "he was doing time for first

4

and second degree murder." Id. When Garcia and Kanode tried to convince Shelton and Collins to move Gomez to a different cell, the officers advised the inmates that Garcia would need to remain in the cell until they found him a different bunk. Id. at 6.

On November 13, 2020, after sharing a cell for one week, Kanode "took [Gomez's] lock and threatened to beat [him] with the lock and stab [him] if [he] did not leave the cell right away." Id. at 3. After he was "almost" attacked by Kanode, Gomez pressed an emergency button and informed Collins about the situation. Id. at 10; see also id. ("I said my cellmate took my lock and he is trying to beat me with it."). Gomez alleges that Collins directed him to return to the cell rather than providing any assistance. Id. When Gomez refused to return to the cell, Collins charged him with disobeying a direct order. Id.

Gomez alleges that he had previously submitted "requests" to Fields, Collins, Warden C. Davis, Assistant Warden K. McCoy, and ADA Coordinator E. Whited in an effort to "prevent altercations and violent fights." Id. at 3. According to Gomez, the requests were sent "before moving to Building (A) where [he] broke [his] hand in the fight the first time." Id.

## II.   Procedural History

Gomez initially filed suit against the Virginia Department of Corrections ("VDOC") and Keen Mountain on November 18, 2020. ECF No. 1. On February 8, 2021, the court notified Gomez of various deficiencies and directed him to file an amended complaint. ECF No. 22. Gomez subsequently filed an amended complaint on February 22, 2021, ECF No. 23, and the court directed service of that pleading, ECF No. 25.

On May 10, 2021, the VDOC, Keen Mountain, Davis, McCoy, Whitt, Fields, Collins, and Shelton (collectively, the "VDOC Defendants") moved to dismiss the amended complaint

5

for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 38. Three days later, Whited and Bucklen (collectively, the "Medical Defendants") filed a similar motion to dismiss. ECF No. 41.

Prior to the filing of those motions, Gomez filed a motion to amend. ECF No. 35. On May 28, 2021, the court issued a memorandum opinion and order in which it granted the motion to amend in part and directed the Clerk to docket the motion as a supplemental amended complaint. ECF No. 51 at 8. The court also granted the VDOC Defendants' motion to dismiss in part and dismissed any claims against the VDOC and Keen Mountain. Id. at 9. The VDOC Defendants' motion was otherwise taken under advisement, and both sets of defendants were given the opportunity to supplement the existing motions to dismiss in light of the allegations set forth in the supplemental amended complaint. Id. at 8–9.

On June 28, 2021, the VDOC Defendants advised the court that they had elected to rely on the memorandum filed in support of their motion to dismiss and that they would not be filing a supplemental or amended motion. ECF No. 55. The Medical Defendants also declined to supplement their existing motion to dismiss. Gomez has responded to the motions to dismiss and they are ripe for disposition.

### III. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible

when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

Where, as here, a complaint was filed pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, a pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

## IV. Discussion

Gomez has filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks and citation omitted). The plaintiff must also show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017); see also Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own actions, has violated the Constitution.").

The court previously construed Gomez's amended complaint as asserting the following claims under § 1983: (1) Eighth Amendment failure-to-protect claims based on being housed with two different gang members; and (2) Eighth Amendment claims for deliberate indifference to serious medical needs. ECF No. 51 at 2. The court will address each claim and the defendants' corresponding arguments in turn.

### A. Failure to Protect

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "imposes duties on [prison] officials, who must provide humane conditions of confinement [and] 'take reasonable measures to guarantee the safety of the [prison's] inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). "In particular, . . . prison officials have a duty . . . . to protect prisoners from violence at the hands of other prisoners." Id. (internal quotation marks and citation omitted).

To state a failure-to-protect claim under the Eighth Amendment, an inmate must allege facts sufficient to satisfy two elements. First, the inmate must establish that he suffered "a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014) (quoting Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010)). Second, the inmate must show that the prison official had a "sufficiently culpable state of mind," which, in this context, means that the

8

official acted with "deliberate indifference to inmate health or safety." Id. at 346–47 (quoting Farmer, 511 U.S. at 834).

Deliberate indifference is "a very high standard" that cannot be met by a showing of "mere negligence." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "A plaintiff establishes 'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Danser, 772 F.3d at 346 (quoting Farmer, 511 U.S. at 837). Importantly, "the official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837). "It not enough that [officials] should have recognized it; they actually must have perceived the risk." Parrish v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004). "Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not' will not give rise to a claim under the Eighth Amendment." Danser, 772 F.3d at 347 (quoting Farmer, 511 U.S. at 838).

### 1. The April 2020 Incident

With these principles in mind, the court first considers whether Gomez's allegations regarding the April 2020 fight with his cellmate are sufficient to state a failure-to-protect claim against the named defendants. Gomez appears to assert that Whitt, Davis, McCoy, Fields, Collins, Shelton, and Whited acted with deliberate indifference to a substantial risk of serious harm. Gomez alleges that Whitt assigned him to a cell shared by a violent gang member even though he asked to be housed with a cellmate who is not affiliated with a gang. Garcia further alleges that he had previously submitted unspecified "requests" to the other defendants in an effort to prevent altercations and fights. See Am. Compl. at 3.

9

Having considered all of the factual allegations and relevant case law, the court concludes that Garcia has not alleged facts sufficient to state a failure-to-protect claim against the named defendants. Even assuming that Gomez's hand fracture satisfies the first element, he does not allege facts from which the court can reasonable infer that the named defendants acted with deliberate indifference to his safety.[3] Merely alleging that he was housed with a gang member is insufficient to plausibly suggest that any of the named defendants "actually knew of and disregarded a substantial risk of serious injury" to Gomez. Parrish, 372 F.3d at 303; see also Smolen v. Brown, No. 7:18-cv-007621, 2020 U.S. Dist. LEXIS 44139, at *12 (S.D.N.Y. Mar. 13, 2020) (holding that "the bare allegation that [the plaintiff's] attacker was a known violent gang member [was] insufficient to establish the requisite deliberate indifference necessary to sustain a failure to protect claim") (internal quotation marks and citations omitted); Covington v. Canerro, 3:17-cv-05145, 2017 U.S. Dist. LEXIS 144515, at *4 (D.N.J. Sept. 6, 2017) (emphasizing that "a bare assertion that gang and non-gang members have been housed together, without more, is insufficient to state a failure to protect claim"); Sutton v. Johnson, No. 7:10-cv-00070, 2010 U.S. Dist. LEXIS 42766, at *4 (W.D. Va. Apr. 30, 2010) (holding that an inmate's "alleged membership in a gang known for violence . . . did not put [a correctional officer] on notice that [the inmate] posed a specific risk of harm to his cell mates or to [the plaintiff] in particular"). As was true in Sutton, Gomez does not allege that his first cellmate "had made any threats to harm him or, if so, that he had communicated such

---

[3] The VDOC Defendants argue that Gomez's hand fracture was not caused by Whitt or any other officer and that Gomez caused the injury himself by punching the cell wall during the fight. In light of the court's conclusion that Gomez's allegations are insufficient to show that any of the named defendants acted with deliberate indifference to his safety, the court finds it unnecessary to address the causation issue raised by the VDOC Defendants.

10

threats" to the defendants. Sutton, 2010 U.S. Dist. LEXIS 42766, at *5. Nor does Gomez allege that he had informed Whitt or the other named defendants of any other reason that his first cellmate posed a particular threat of harm to him. Id. Because Gomez has not shown that the defendants actually knew of and disregarded a substantial risk that he would be assaulted by his first cellmate, the court concludes that the allegations regarding the April 2020 incident are insufficient to state a failure-to-protect claim under the Eighth Amendment.

### 2. The November 2020 Incident

The court likewise concludes that Gomez's allegations regarding the incident with David Kanode in November 2020 are insufficient to withstand dismissal under Rule 12(b)(6). As the VDOC Defendants note in their motion, Gomez does not claim to have suffered any harm as a result of this incident. Instead, Gomez alleges that Kanode attempted to strike him with a lock and almost attacked him. While serious physical injury "is not necessarily required to sustain an Eight Amendment failure to protect claim," Gomez does not allege that he suffered any injury as a result of being required to share a cell with Kanode. Jasmaine v. Gazoo, No. 3:18-cv-00533, 2021 U.S. Dist. LEXIS 12868, at *19 (W.D.N.C. Jan. 25, 2021). Consequently, his allegations regarding the November 2020 incident are insufficient to state a claim under the Eighth Amendment. Id.; see also Rodgers v. Perkins, No. 1:13-cv-00987, 2013 U.S. Dist. LEXIS 187948, at *6 (E.D. Va. Dec. 19, 2013) (holding that a failure-to-protect claim was subject to dismissal since the plaintiff failed to allege that he suffered any injury); Barbour v. Canterburg, No. 7:10-cv-00579, 2011 U.S. Dist. LEXIS 1329, at *4 (W.D. Va. Jan. 6, 2011) (same).

### B. Deliberate Indifference to Serious Medical Needs

Gomez also asserts claims of deliberate indifference to his serious medical needs resulting from the April 2020 incident. "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016)). A constitutional violation occurs "[w]hen a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id. As is true with failure-to-protect claims under the Eighth Amendment, claims of deliberate indifference to serious medical needs have two components. "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." Heyer v. United States Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017).

"The objective component of a deliberate indifference claim is satisfied by a serious medical condition." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019). A serious medical condition is one that is "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotation marks and citation omitted).

"The subjective component is satisfied by proof of a defendant's deliberate indifference." Id. at 357. "In the context of a claim related to the denial of medical treatment, a defendant 'acts with deliberate indifference if he had actual knowledge of the [plaintiff's] serious medical needs and the related risks, but nevertheless disregarded them.'" Id. (quoting

12

DePaola, 884 F.3d at 486). A plaintiff can satisfy the subjective knowledge requirement through direct evidence of a defendant's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence that the defendant knew of a substantial risk from the very fact that the risk was obvious. Id.

"The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in original) (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). When a claim of deliberate indifference is predicated on a delay in medical care, the United States Court of Appeals for the Fourth Circuit has "ruled that there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the [plaintiff,]' such as a 'marked' exacerbation of the [plaintiff's] medical condition or 'frequent complaints of severe pain.'" Id. (emphasis omitted) (quoting Webb v. Hamidullah, 281 F. App'x 159, 166–67 (4th Cir. 2008)); see also Sharpe v. S.C. Dep't of Corr., 61 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.").

With this framework in mind, the court considers whether Garcia has stated a claim of deliberate indifference against any of the named defendants. Beginning with the objective component of such claim, the court is satisfied that Garcia has sufficiently alleged that he suffered from serious medical needs—namely, a hand fracture and related pain. "Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones." Lomax v. Ottey, No. 8:14-cv-02180, 2015 U.S. Dist. LEXIS 102216, at *10

13

n.5 (D. Md. Aug. 4, 2015) (collecting cases); see also Joh v. Suhey, 709 F. App'x 729, 730 (3d Cir. 2017) (holding that "allegations of a fractured finger state a claim of a serious medical need"); Lepper v. Nguyen, 368 F. App'x 35, 39 (11th Cir. 2010) (noting that a hand injury resulting from accidentally striking a cell wall "certainly qualifies as a an objectively serious medical need"); Johnson v. Hamilton, 452 F.3d 967, 971 (8th Cir. 2006) (holding that a fractured finger qualified as objectively serious); Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) (holding that a dislocated finger was objectively serious); Murphy v. Walker, 51 F.3d 714, 720 (7th Cir. 1995) (observing that "[a] broken hand is a serious injury"). Likewise, courts have held that "untreated severe pain" satisfies the objective component. Al-Turki v. Robinson, 762 F.3d 1188, 1194 (10th Cir. 2014); see also Krell v. Braightmeyer, 828 F. App'x 155, 159 (4th Cir. 2020) (rejecting the defendants' argument that "mere complaints of pain were insufficient to establish a constitutional violation" and holding that evidence that officers failed to provide medical care for a detainee's severe pain was "enough to prevail on a claim of deliberate indifference"); Melton v. Abston, 841 F.3d 1207, 1222 (11th Cir. 2016) (recognizing that broken bones are serious medical needs and that severe pain that is not promptly or adequately treated can also constitute a serious medical need).

     As for the subjective component of Gomez's claims, the court concludes that Gomez has plausibly alleged that Unit Manager Fields acted with deliberate indifference to his serious medical needs. Gomez's pleadings and the attached exhibits indicate that his hand was visibly swollen and discolored after punching the cell wall, that he complained of severe pain, and that he believed that he had fractured a bone in his hand. Gomez alleges that he personally asked Fields for help and that Fields did not take any action to assist him in obtaining medical

14

treatment. Instead, Fields directed Gomez to contact the medical department himself, which proved unsuccessful. When Gomez requested help from other correctional officers, they sent him back to Fields, suggesting that Fields could have assisted Gomez in obtaining treatment but declined to do so. At this stage of the proceedings, the court concludes that Gomez's allegations plausibly suggest that Fields was aware that Gomez had suffered a painful injury and that he intentionally declined to assist Gomez in obtaining medical treatment. Such inaction on the part of correctional officials, in the face of an obvious need for medical care, provides a reasonable basis for finding deliberate indifference. See Scinto, 841 F.3d at 232 (holding that the outward signs of the plaintiff's need for medical attention and the defendants' contemporaneous failure to offer aid gave rise to an inference of deliberate indifference); Cokley v. Townley, No. 90-6826, 1991 U.S. App. LEXIS 1931, at *6 (4th Cir. 1991) (finding that evidence of a three-day delay in obtaining medical treatment for an inmate's broken hand was sufficient to survive summary judgment on a claim of deliberate indifference against a correctional officer where the inmate continued to complain of pain after the officer spoke to a nurse by telephone); Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (holding that an eleven-hour delay in seeking medical treatment for a detainee's broken arm provided "a reasonable basis for the inference that there was deliberate indifference to [the detainee's] serious medical needs either on the part of some or all of the state defendants").

The court also concludes that Gomez has plausibly alleged that Nurse Bucklen acted with deliberate indifference to his serious medical needs. Gomez alleges that he submitted "several sick call requests" after fracturing his hand but "was never called to see the doctor about the fracture." Supp'l Am. Compl. at 4. The exhibits submitted by Gomez indicate that

15

Bucklen was personally aware of his requests for medical attention by no later than May 5, 2020, when she responded to a written request for treatment for a possible fracture. That request was one of several answered by Bucklen in which Gomez complained of severe pain and requested an x-ray. Nonetheless, an x-ray had still not been ordered on September 18, 2020, when Bucklen responded to another request for treatment. An x-ray was not performed until October 6, 2020, more than five months after Gomez injured his hand. According to Gomez, the delay prevented the orthopedic surgeon from being able to repair the fracture in a timely manner, and Gomez will now be required to have the bone rebroken and reset. Gomez's allegations, when viewed in his favor, allow the court to reasonable infer that Bucklen was personally involved in the delay or denial of treatment for Gomez's hand fracture and that the delay exacerbated his injury. Accordingly, the court concludes that Gomez has stated a plausible claim for deliberate indifference against Bucklen. See Hunt v. Sandhir, 295 F. App'x 584, 586 (4th Cir. 2008) (holding that a medical provider's alleged failure to treat an inmate's fractured elbow for at least nine days was sufficient to state a claim for deliberate indifference); Loe, 582 F.2d at 1296 (holding that the "unusual length of the delay" in treating a broken arm supported a claim of deliberate indifference); Hicks v. Janiszewski, No. 5:13-cv-00140, 2014 U.S. Dist. LEXIS 83410, at *9–10 (N.D.W. Va. June 19, 2014) (holding that an inmate adequately stated a claim for deliberate indifference based on a one-month delay in obtaining treatment for his fractured hand); Harris v. Commonwealth, No. 3:07-cv-00701, 2008 U.S. Dist. LEXIS 68405, at *14 (E.D. Va. Sept. 8, 2008) (allowing a claim of deliberate indifference to proceed against a nurse where the complaint plausibly alleged that the nurse's "delay in

scheduling an x-ray and a visit with a physician could have exacerbated [the plaintiff's] injuries").

To the extent Gomez seeks to hold any of the other defendants liable for deliberate indifference to his serious medical needs, the court concludes that his allegations are insufficient to withstand a motion to dismiss. His pleadings are devoid of facts from which the court could reasonably infer that Davis, McCoy, Whitt, Collins, Shelton, or Whited were personally involved in the alleged delay or denial of medical treatment for his hand fracture and associated pain. See Doe v. Rosa, 795 F.3d 429, 439 n.7 (4th Cir. 2015) (explaining that a government official's own actions must violate a plaintiff's constitutional rights in order to impose liability under § 1983 and that it is "not enough" that a defendant had supervisory authority over other employees) (citing Iqbal, 556 U.S. at 676). While Gomez asserts that Collins and Shelton failed to respond to his requests for a bottom bunk in the fall of 2020, he does not allege that the failure to grant his requested bunk assignment exacerbated his hand injury or caused any other harm. Nor does he allege facts sufficient to show that Collins and Shelton knew of and disregarded an excessive risk to his health or safety. Accordingly, Gomez has failed to state a claim of deliberate indifference against Davis, McCoy, Whitt, Collins, Shelton, and Whited.

Finally, having determined that the complaint states plausible claims of deliberate indifference against Fields and Bucklen, the court must address the Medical Defendants' argument that Bucklen is entitled to qualified immunity. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

17

have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a government official is protected by qualified immunity, the court considers (1) whether the plaintiff has plausibly alleged a violation of a statutory or constitutional right, and (2) whether the right was clearly established at the time of the conduct in question. See Pearson v. Callahan, 555 U.S. 223, 227 (2009). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Peltzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

For the reasons explained above, Gomez has alleged facts sufficient to establish that the delay or denial of medical treatment for his hand injury violated the Eighth Amendment and that Bucklen was personally involved in the alleged constitutional violation. To the extent Bucklen argues that the right at issue was not clearly established, the court disagrees. The Fourth Circuit has emphasized that "[a] prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and [the Fourth] Circuit since at least 1976." Scinto, 841 F.3d at 236 (collecting cases); see also Gordon, 937 F.3d at 356 ("It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment."). Additionally, the law was clearly established that "[a] delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate-indifference claim, so long as the medical condition is sufficiently serious or painful." Grieveson v. Anderson, 538 F.3d 763, 799 (7th Cir. 2008) (citations omitted); see also Krell, 828 F. App'x at 159 (holding that "the requirement that

Defendants provide treatment for Krell's pain was clearly established at the time of the incident"); Harris v. Coweta Cnty., 21 F.3d 388, 393–94 (11th Cir. 1994) (noting that a "[d]elay in treatment of serious and painful injuries was . . . clearly recognized as rising to the level of a constitutional claim" and that a "few hours' delay in receiving medical care for emergency needs such as broken bones . . . may constitute deliberate indifference"). Accordingly, at this stage of the proceedings, Bucklen is not entitled to qualified immunity.

## IV. Conclusion

For the reasons set forth herein, the motions to dismiss filed by the VDOC Defendants and the Medical Defendants, ECF Nos. 38 and 41, are **GRANTED IN PART AND DENIED IN PART**. The court **DISMISSES** the failure-to-protect claims under the Eighth Amendment and any Eighth Amendment claims of deliberate indifference against Davis, McCoy, Whitt, Collins, Shelton, and Whited. The case will proceed on Garcia's claims of deliberate indifference against Fields and Bucklen. Because no claims remain against Davis, McCoy, Whitt, Collins, Shelton, and Whited, they will be terminated as parties to this action. An appropriate order will be entered.

Entered: March 10, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.03.10 09:32:36
-05'00'

Michael F. Urbanski
Chief United States District Judge