IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **MARVIN EDUARDO LUNA GOMEZ,** )<br>       Plaintiff,                                  )<br>                                                    )<br>**v.**                                              )<br>                                                    )<br>                                                    )<br>**L. FIELDS, et al.,**                    )<br>       Defendants.                         ) | Case No. 7:20-cv-00726<br><br><br>By: Michael F. Urbanski<br>Chief United States District Judge |

## MEMORANDUM OPINION

Marvin Eduardo Luna Gomez, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that staff members at Keen Mountain Correctional Center ("Keen Mountain") violated his rights under the Eighth Amendment. The case is presently before the court on dispositive motions filed by the remaining defendants, A. Bucklen, L. Fields, and J. Webb, ECF Nos. 70, 74, and 81. For the reasons set forth below, the motions are **GRANTED**.

### Background

Gomez arrived at Keen Mountain in February 2020. Approximately two months later, Gomez got into a fight with his cellmate, who he has described as a "violent gang member from California." Am. Compl., ECF No. 23, at 3. During the altercation, Gomez accidentally punched a concrete wall with his right hand, causing a fracture. Gomez claims that he asked Unit Manager L. Fields for help following the incident and that Fields did not take any action to assist him in obtaining medical treatment. Gomez further asserts that Nurse A. Bucklen was personally aware of his requests for medical attention and that, despite his requests, an x-ray was not performed until October 6, 2020, more than five months after Gomez injured his

hand. Gomez alleges that the delay prevented an orthopedic surgeon from being able to properly repair the fracture.

In November 2020, Gomez was placed in a cell with a different inmate. Gomez alleges that the inmate is a member of a Neo-Nazi prison gang and that he was required to remain in the cell with the inmate after the inmate threatened him.

Gomez initially filed this action in the United States District Court for the Eastern District of Virginia. The case was transferred to this district in December 2020. On February 8, 2021, the court notified Gomez of various pleading deficiencies and directed him to file an amended complaint. Gomez subsequently filed an amended complaint on February 22, 2021, and the court directed service of that pleading. The amended complaint named several VDOC employees as defendants, including Unit Manager Fields and "J. Webb, Grievance Coordinator." Am. Compl. at 1. The amended complaint also named Nurse Bucklen and another medical staff member as defendants. Id.

Fields, Bucklen, and other defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). The court construed the amended complaint as asserting the following claims under 42 U.S.C. § 1983: (1) Eighth Amendment failure-to-protect claims; and (2) Eighth Amendment claims of deliberate indifference to a serious medical need. On March 11, 2022, the court granted in part and denied in part the motions to dismiss. The court dismissed the failure-to-protect claims and any claims of deliberate indifference asserted against six named defendants. The court denied the motions with respect to Gomez's claims of deliberate indifference against Fields and Bucklen, and permitted those claims to proceed. See Order, ECF No. 65, at 1.

The case is now before the court on a motion to dismiss filed by Grievance Coordinator J. Webb and motions for summary judgment filed by Bucklen, Fields, and Webb. Webb argues that his name appears only in the caption to the amended complaint and that Gomez has not plausibly asserted that Webb was personally involved in any of the alleged deprivations of his rights under the Eighth Amendment. In moving for summary judgment, Bucklen, Fields, and Webb primarily argue that Gomez failed to exhaust available administrative remedies. The defendants' motions have been fully briefed and are ripe for disposition.

## **Standards of Review**

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks and citation omitted).

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va.

v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. To survive summary judgment, there must be sufficient evidence from which a reasonable jury could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks and citation omitted).

## Discussion

### I. Personal Involvement in the Alleged Violations

Gomez filed suit against the defendants under 42 U.S.C. § 1983. "Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks and citations omitted). "To establish personal liability under § 1983, . . . the plaintiff must 'affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights.'" Id. (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). That is, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 556 U.S. at 676.

Defendant Webb correctly notes that his name appears solely in the caption of the amended complaint. See Am. Compl. at 1 (listing "J. Webb, Grievance Coordinator" as a

4

defendant). The amended complaint, the supplemental amended complaint, and the exhibits attached to the pleadings are otherwise silent as to Webb's involvement in the incidents giving rise to this action. Because the pleadings do not describe any interactions that Gomez had with Webb, much less identify acts committed by Webb that allegedly violated Gomez's constitutional rights, the allegations are insufficient to state a plausible claim for relief against Webb. See Langford v. Joyner, ___ F.4th ___, 2023 WL 2335957, at *2 (4th Cir. Mar. 2, 2023) (affirming the dismissal of a complaint for failure to state a claim where the plaintiff made "only collective allegations against all 'Defendants,' without identifying how each individual Defendant personally interacted with [Plaintiff] or was responsible for the denial of his Eighth Amendment rights"); Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed."). Accordingly, the court will grant Webb's motion to dismiss under Rule 12(b)(6).

## II. Exhaustion of Administrative Remedies

Bucklen, Fields, and Webb have moved for summary judgment on the basis that Gomez failed to exhaust his administrative remedies. It is well settled that "exhaustion is mandatory" under the Prison Litigation Reform Act ("PLRA"), Jones v. Bock, 549 U.S. 199, 211 (2007), and that "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002). Under the PLRA, inmates are required to exhaust administrative remedies prior to filing suit in federal court. 42 U.S.C. § 1997e(a). Moreover, "proper exhaustion" of administrative remedies is required, which includes "compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Because "failure to exhaust is an affirmative defense under the PLRA," the defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216; see also Woodhouse v. Duncan, 741 F. App'x 177, 178 (4th Cir. 2018). "Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or that administrative remedies were unavailable through no fault of the inmate." Conley v. Grigsby, No. 7:22-cv-00027, 2023 WL 1868228, at *11 (W.D. Va. Feb. 9, 2023) (citing Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011)).

### A. VDOC Grievance Process

VDOC Operating Procedure ("OP") 866.1, titled "Offender Grievance Procedure," is the mechanism used to resolve most inmate complaints. It applies to "[a]ctions of individual employees and/or offenders which affect the grievant personally, including any denial of access to the grievance procedure," as well as "[a]ny other matters relating to conditions of care or supervision within the authority of the DOC which affect the grievant personally." OP 866.1(IV)(M)(1), Viars Aff. Encl. A, ECF No. 71-1.

Pursuant to OP 866.1, inmates must first make "a good faith effort to resolve their issue informally" through the procedures available at the institution. OP 866.1(V)(A)(1). Generally, this may be accomplished by submitting an informal complaint to the grievance department, which is then forwarded to the appropriate staff for investigation and a response. Id. The response should be provided within 15 calendar days. OP 866.1(V)(B).

If an inmate does not receive a timely response to an informal complaint, or if the inmate is dissatisfied with the response, the inmate may submit a regular grievance. OP

866.1(V)(A)(3); see also OP 866.1(VI) (describing the regular grievance procedure). A regular grievance generally must be submitted within 30 calendar days from the date of the incident or the discovery of the incident. OP 866.1(VI)(A)(1). The 30-day deadline may be excused in certain circumstances, such as when instances beyond an inmate's control prevent the inmate from filing a timely grievance. Id.

Prior to reviewing the substantive allegations contained in the grievance, prison officials conduct an intake review to ensure that it meets the published criteria for acceptance. See OP 866.1(VI)(B). For instance, a grievance may be rejected if it raises more than one issue. OP 866.1(VI)(A)(2)(a). A grievance also may be rejected on the basis that it is untimely or repetitive, or because it is a request for services. Viars Aff. ¶ 5, ECF 82-2. If the grievance does not meet the criteria for acceptance, prison officials return it to the inmate with instructions on how to remedy any problems with it. Id. A grievance that does not meet the criteria for acceptance should be returned within two working days of receipt. OP 866.1(VI)(B)(4). The inmate may seek review of the intake decision by sending the grievance form to the appropriate regional ombudsman. OP 866.1(VI)(B)(5). "If the grievance meets the criteria for acceptance, the grievance should be logged in VACORIS using the working day received," and prison staff should issue a grievance receipt within two working days of receipt. OP 866.1(VI)(B)(3).

There are three level of review for an accepted regular grievance. The "Facility Unit Head" is responsible for providing a Level I response within 30 calendar days. OP 866.1(VI)(C). A dissatisfied inmate may appeal to Level II, where the appeal is reviewed by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. Id. Level II responses must be provided within 20 calendar

7

days. Id. For most issues, Level II is the final level of review. Id. For those issues appealable to Level III, the Chief of Corrections Operations or the Director of the VDOC conducts a review of the grievance, and a response must be provided within 20 calendar days. Id. "Expiration of a time limit (to include any authorized continuance) at any stage of the process shall be considered a denial and shall qualify the grievance for appeal to the next level of review." VDOC 866.1(VI)(D)(5).

OP 866.1 explains that an inmate satisfies the requirements for exhausting administrative remedies only when a regular grievance has been accepted and appealed through the highest eligible level of review without a satisfactory resolution of the issue. OP 866.1(IV)(O). Although an inmate may file an emergency grievance to report "situations or conditions which may subject the [inmate] to immediate risk of serious physical injury or irreparable harm," OP 866.1(VII)(A), the submission of an emergency grievance "does not satisfy the exhaustion of remedies requirement," OP 866.1(IV)(O)(2)(a). If an inmate is not satisfied with the response to an emergency grievance, he must file a regular grievance. Id.

### B. Gomez's Failure to Exhaust

The defendants have presented evidence establishing that Gomez failed to exhaust his administrative remedies prior to filing suit. To support their exhaustion arguments, the defendants submitted affidavits executed by two grievance coordinators at Keen Mountain, K. Breeding and H. Viars.

Exhibits attached to Breeding's affidavit indicate that Gomez submitted an emergency grievance on July 31, 2020, in which he requested that x-rays be performed on his wrist. Breeding Aff. Ex. B at 13, ECF No. 71-1. Gomez noted that he had "accidentally punched the wall in a cell fight" and that he thought his wrist was fractured. Id. That same day, Nurse

8

T. Martin responded to the emergency grievance by advising Gomez to "sign up for sick call to get scheduled with [the] doctor." Id. It is undisputed that Gomez received a copy of Martin's response, which he attached as an exhibit to his amended complaint. See Am. Compl. Attach., ECF No. 23 at 15. According to Breeding's affidavit, Gomez did not file a regular grievance after receiving the response. Breeding Aff. ¶ 12.

More than two months later, on October 3, 2020, Gomez signed an informal complaint alleging that he might have broken his thumb and wrist during a cell fight and that he was still waiting to undergo x-rays. Breeding Aff. Ex. B at 9. The medical department received the informal complaint on October 6, 2020, the same day that x-rays were performed,[1] and Bucklen responded to the informal complaint on October 20, 2020. See id. (noting that sick call is available Monday through Friday). According to Breeding's affidavit, Gomez did not file a regular grievance or take any further administrative action regarding the injury or the alleged denial of medical treatment. See Breeding Aff. ¶ 13 ("Mr. Gomez provided no additional follow up Complaints and did not elevate his complaints through the required administrative process provided to him.").

Viars' affidavits similarly indicate that Gomez "has not submitted any regular grievances accepted for intake concerning [his] claim that Unit Manager Fields took no action to assist him in obtaining medical care after [he] had fractured his hand during a fight with a cellmate on April 21, 2020." Viars Supp'l Aff., ECF No. 86-1, at ¶ 3; see also Viars Aff., ECF No. 82-2, at ¶ 8 ("Grievance records kept at Keen Mountain Correctional Center reflect that Luna Gomez has not submitted any regular grievances or had any regular grievances accepted

---

[1] According to diagnostic test results dated October 6, 2020, x-rays revealed a fracture in the fifth metacarpal bone in Gomez's right hand. Supp'l Am. Compl. Attach., ECF No. 35-1 at 3.

for intake concerning the claim [against Fields]."). According to Viars' supplemental affidavit and the attached report generated from VACORIS, Gomez did not file <u>any</u> regular grievances accepted for intake from the time he was transferred to Keen Mountain on March 19, 2020, until March 15, 2021, the date on which the defendants were notified of this action. Viars Supp'l Aff. ¶¶ 3–5 & Encl. A.

The defendants have plainly met their burden of establishing that Gomez failed to exhaust his administrative remedies prior to filing suit. In response to the defendants' motions, Gomez asserts that he has submitted exhibits demonstrating that he "did not fail to exhaust his administrative remedies." Pl.'s 2d Supp'l Resp., ECF No. 93, at 5. The forms on which he relies as "proof," <u>id.</u>, however, do not indicate that he ever filed a regular grievance regarding the incidents giving rise to this action. <u>Id.</u> Instead, the forms consist of informal complaints complaining about the delayed delivery of meal trays; offender requests for medical services; the emergency grievance signed on July 31, 2020; and a regular grievance complaining about the delayed delivery of meal trays, which was rejected at intake because Gomez did not submit the back page of the grievance form. <u>See</u> Pl.'s Supp'l Resp. Attachs., ECF No. 89-1; Pl's 2d Supp'l Resp. Attachs., ECF No. 93-1. Some of the exhibits clearly pertain to unrelated matters, and none of them satisfy the PLRA's exhaustion requirement. Accordingly, the court concludes that there is no dispute of material fact as to whether Gomez exhausted his administrative remedies prior to filing suit.

The record is also devoid of evidence from which a reasonable finder of fact could conclude that Gomez was prevented from availing himself of the grievance process "through no fault of his own." <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008). Gomez asserts that he "complained about grievances and request forms not being returned back to [him when

10

he filed] the regular grievance that was returned because it did not have a back page . . . ." Gomez Supp'l Resp., ECF No. 89, at 1. As indicated above, however, that grievance specifically pertained to the delayed delivery of meal trays; it made no mention of a hand injury or a need for medical attention. See Supp'l Resp. Attach., ECF No. 89-1 at 4. Although Gomez asserted in the grievance that "nobody returns informal complaints, informal requests or emergency grievances," id., he submitted copies of informal complaints, informal requests for services, and emergency grievances in response to the defendants' motion for summary judgment that had been answered and returned by prison officials. "Numerous courts within the Fourth Circuit and elsewhere have held that unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered . . . fail to create a genuine issue of material fact sufficient to withstand summary judgment." Conley, 2023 WL 1868228, at *12 (internal quotation marks and citations omitted). Moreover, the alleged failure to receive a timely response to an informal complaint or a grievance does not excuse an inmate from being required to proceed to the next level to properly exhaust his administrative remedies. See OP 866.1(V)(A)(3) ("If 15 calendar days have expired from the date the Informal Complaint was logged without the offender receiving a response, the offender may submit a Grievance on the issue and attach the Informal Complaint receipt as documentation of the attempt to resolve the issue informally."); OP 866.1(VI)(D)(5) ("Expiration of a time limit . . . at any stage of the process shall be considered a denial and shall qualify the grievance for appeal to the next level of review."); see also Robertson v. Roberts, No. 7:13-cv-00560, 2014 WL 5801893, at *3 (W.D. Va. Nov. 7, 2014) (noting that OP 866.1 "does not relieve Plaintiff of all the responsibilities required of him due to an unexplained discrepancy in the delivery or processing of a grievance form").

In short, there is no evidence from which a reasonable factfinder could conclude that Gomez exhausted his administrative remedies related to the claims giving rise to this action or that the remedies he should have pursued were unavailable to him through no fault of his own. Accordingly, the defendants are entitled to summary judgment on the exhaustion defense.[2]

## Conclusion

For the reasons stated, the motion to dismiss filed by Webb, ECF No. 74, and the motions for summary judgment filed by Bucklen, Fields, and Webb, ECF Nos. 70 and 81, are **GRANTED**. An appropriate order will be entered.

Entered: March 14, 2023

Digitally signed by Michael F. Urbanski
Chief U.S. District Judge
Date: 2023.03.14 17:02:15 -04'00'

Michael F. Urbanski
Chief United States District Judge

---

[2] In light of this decision, the court finds it unnecessary to address the defendants' alternative arguments on the merits of the claims of deliberate indifference.